### JOHNSON et al. v. ATLAS IMP. CO. et al.

(Supreme Court, Appellate Division, First Department. March 10. 1905.)

CONTRACT TO DEFRAY EXPENSE OF LITIGATION—CONSTRUCTION.

Plaintiffs, in contemplation of making a contract, which they afterwards made, with railroad companies, to construct their road, made a contract with defendants, whereby defendants covenanted to be at the expense of all the actions and legal proceedings necessary for obtaining and maintaining the franchises of said companies to construct the road. At the time there was pending an action against the railroad companies, a city, and others, to annul the grant to said companies by the city council of the right to construct the road along certain routes. The companies appeared in said action by their attorneys—reputable and competent—and were properly defending it. Plaintiffs also employed attorneys, who, by consent of defendants and said companies, took part in the defense. *Held*, that the contract did not make defendants liable for the fees of the attorneys so employed by plaintiffs, in the absence of a showing that their services were necessary, or that they, or other attorneys than those who had previously appeared, should have been employed.

Ingraham, J., dissenting.

Appeal from Special Term, New York County.

Action by Albert L. Johnson and another against the Atlas Improvement Company and another. From a judgment for defendants after trial of the issues, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Samuel B. Clarke, for appellants.
Augustus Van Wyck, for respondents.

LAUGHLIN, J. The appeal involves but a single question, and it depends upon the construction of a written contract. Prior to the 2d day of April, 1894, the respondent company had undertaken the completion of a contract between one Boland and the Nassau Electric Railroad Company for acquiring and perfecting the right and franchise to build and operate an electric street surface railroad in Kings county upon the route of said railroad company, and upon the routes of the Kings County Electric Railway Company, the Coney Island, Ft. Hamilton & Brooklyn Railroad Company, and the Union Railway Company, of the city of Brooklyn, and to construct and equip the railroad for operation, and the plaintiffs had negotiated for the work of construction and equipment embraced in said contract. On the day last mentioned the plaintiffs and the defendant company made a con-

tract in writing for the division of the stock and bonds of the Nassau Electric Railroad Company, to which it was contemplated that plaintiffs would be entitled if they took the contract for the construction and equipment, and containing covenants and agreements with a view to enabling the railroad companies to contract with the plaintiffs for such construction and equipment. Thereafter, and on the 12th day of April, 1894, the plaintiffs and the defendants made a contract reciting that it was contemplated that the plaintiffs should obtain a contract for the construction and equipment of said railroads; reciting the division of the stock and bonds to be made between the plaintiffs and the defendant company, and containing a covenant on the part of the defendants that the railroad companies then had or would obtain the right to construct, equip, and operate at least 15 miles of continuous double track during the year 1894 on either of two routes therein specified, and for the construction, equipment, and operation of the remainder of the railroad prior to the 1st day of June, 1897. Then follows the clause on the construction of which the appeal depends, as follows:

"II.—Atlas [meaning the Atlas Improvement Company] and Flynn [meaning the defendant] jointly and severally further agree to be at the expense of all the actions and legal proceedings necessary for obtaining or maintaining the franchises of the said railroad companies to construct, maintain and operate the proposed railroad on the routes mentioned in said construction contract till, as to each separate action or proceeding, as it may be necessary to bring or defend, one favorable decision has been obtained, the further expense in any action or proceeding after one favorable judicial decision has been obtained to be borne by the said Nassau Electric Railway Company; but after all consents, franchises, etc., necessary for the construction, equipment and operation of fifteen miles of continuous double track during the year 1894 on either routes 4 and 8 or on routes 5 and 7 shall have been provided, the obligations of Atlas and Flynn under this and the preceding article shall not extend further as to other portions of said railroad than to actions or proceedings which may be brought or actually pending prior to ninety days after any such portion of the railroad shall be completed and in operation pursuant to said construction contract. Provided, however, that Atlas and Flynn shall be released from their obligations under this and the preceding article as to any portion of said railroad other than the fifteen miles of continuous double track to be constructed in 1894 if the construction and operation of such portion shall be prevented by hostile legislation, or if they shall pay all expense necessary for obtaining a decision of the court of last resort as to such portion whether such decision shall be favorable or adverse."

The defendants further covenanted that at the time of signing the construction contract the railroad companies should be free from debt, and that they would pay all debts and obligations of the companies then existing or theretofore originated, and that thereafter, and until the plaintiffs should elect a majority of the board of directors of the Nassau Company, by virtue of the ownership of the stock to be acquired under the construction contract, no debt or obligation should be incurred without their consent, and that the defendants would pay and extinguish any such debt incurred without such consent. The contract further provided for defraying any expense of the railroad companies that might be incurred by consent of the plaintiffs, and contained an agreement supplemental to the agreement of April 2, 1894, with respect to the ownership and holding of certain stock and bonds to be received by the plaintiffs under the construction contract. Subsequently, and on the 16th day of the same month, the plaintiffs and said railroad com-

panies entered into a contract for the construction and equipment of
the railroad along the routes specified, and thereafter the plaintiffs
entered upon the work of construction.

The validity of a resolution of the Common Council of the city of
Brooklyn adopted on the 19th day of June, 1893, on the application of
the Nassau Company and the Kings County Company, granting the
right to construct a railroad along certain routes therein specified, was
essential to the right to construct the 15 miles of double track during
the year 1894 along either route specified in the agreement of April
12, 1894. On the 8th day of December, 1893, one John Adamson, a
property owner along the route, brought a taxpayer's action in the
Supreme Court, Kings county, against the Nassau Company, the Kings
County Company, the city of Brooklyn, and others, to annul said grant
by the common council of the city of Brooklyn on the 19th day of
June, 1893, and to enjoin the construction of the railroad thereunder.
The railroad companies appeared in that action by their respective at-
torneys, who were both reputable and competent. This action was
pending at the time the agreement of April 12, 1894, was made. There
is no claim that it was not being properly defended, or that there was
any neglect in bringing the issues to trial. Before the trial came on,
however, the plaintiffs had expended upwards of $1,000,000 and in-
curred further extensive liabilities in the construction of the road along
the route involved in that action. The plaintiffs were not parties to the
action, nor were they enjoined.; but, inasmuch as they were agents of
the railroad companies, and their only authority for the construction
was the grant of the common council under which the contract with
them was made, they would be affected, by the final judgment, if ad-
verse to the railroad.

The appeal brings up the judgment roll only. The plaintiffs em-
ployed Messrs. Root & Clarke, who took part in the action, by consent
of the defendants herein and of the railroad companies, the defendants
therein, prior to and upon the trial which resulted in a judgment on the
11th day of May, 1895, annulling the grant, and enjoining the compa-
nies, their agents, servants, and employés, and on an appeal taken to
the General Term, which resulted in a reversal and the dismissal of
the complaint in July, 1895. The reasonable value of the services and
the amount of necessary disbursements of these attorneys was $23,-
097.11, which the plaintiffs paid, and, upon the trial hereof, sought
to recover of the defendants. Recovery was refused, and the correct-
ness of the decision in this regard is the question presented by the
appeal. Upon this point the court found:

"Plaintiffs employed their own counsel, Messrs. Root & Clarke, for the de-
fense of said action ; and, by consent of the defendants in this action and of said
railroad companies, said Root & Clarke appeared for said railroad companies
with Mr. George and Mr. Allen, reputable lawyers employed by the defend-
ants in the defense of said action."

The plaintiffs were, of course, interested in the result of the litiga-
tion, for they had already invested a vast amount of money and in-
curred additional extensive liabilities, and their right to complete the
contract work necessarily depended upon the result of the litigation.
The action was pending, however, at the time the contract upon which

the plaintiffs rely was made. We think it would not be a reasonable construction of the provision of the contract of April 12, 1894, by which the defendants agreed to be at the expense of all the actions and legal proceedings necessary for obtaining or maintaining the franchises of the railroad companies, to hold that it contemplated that the plaintiffs should be at liberty to employ their own attorneys to take part in the prosecution or defense of any litigation, regardless of whether they were parties thereto, or not, and regardless of the necessity therefor. It is to be borne in mind that the plaintiffs were not parties to the litigation, and that there is no finding that it was necessary to a proper defense of the action that these or any attorneys should have been employed by them in these circumstances. The mere fact that the defendants and the railroad companies consented to the plaintiffs' attorneys co-operating and taking part with the attorneys for the railroad company in the defense of the action does not, we think, render the defendants liable to the plaintiffs under this agreement. The consent of the defendants is explainable on the theory that they, being responsible to the railroads under their contract to obtain valid franchises, either had charge of the defense of the action, or were liable for the expense thereof.

It follows, therefore, that the judgment should be affirmed, with costs. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting). I do not concur in the prevailing opinion. I think that when the plaintiffs employed Root & Clarke to assist in the defense of the action, which involved the validity of the consent necessary for the construction of the road, and, by the consent of the defendants and the railroad company, Root & Clarke appeared for said railroad company upon the trial of the action, and assisted in the defense; the fees of Root & Clarke were an expense in an action, the defense of which was necessary for maintaining the franchise of the railroad company; and thus, under the second clause of the contract, the defendants became liable for the fees of Root & Clarke. The defendants having agreed to pay the expense of all actions and legal proceedings necessary for maintaining the franchises of the said railroad companies to construct, maintain, and operate the proposed railroad, the necessary legal expenses in defending the action specified was an obligation assumed by the defendants, and when the plaintiffs, who, under this contract, had invested a large sum of money in the construction of the railroad, employed counsel to assist in the defense of the action, and such counsel, with the consent of the defendants and the railroad companies, appeared and took part in the defense, and rendered services in defeating the action, the fees of Root & Clarke were just as much an expense in the defense of the action as were the fees of Mr. Choate, who was also engaged as counsel for the defendant, and whose fee was allowed by the referee.

I think the judgment should be modified by including in it the amount which is conceded was paid to Root & Clarke as their fees in the defense of that action.